UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK S. LAGRONE,<br><br>  Petitioner,<br><br> v.<br><br>PATRICK COVELLO,<br><br>  Respondent. | Case No. 22-cv-03249-JST<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Mark LaGrone, challenging the validity of his state court conviction. ECF No. 1. Respondent has filed an answer to the petition. ECF No. 10 ("Answer"). Petitioner has filed a traverse. ECF No. 13. For the reasons set forth below, the Court DENIES the petition for a writ of habeas corpus and DENIES a certificate of appealability.

## I. PROCEDURAL HISTORY

On February 26, 2020, an Alameda County jury found Petitioner guilty of two counts of assault with a deadly weapon, along with an enhancement for personal infliction of great bodily injury. The jury also found Petitioner not guilty of two counts of attempted murder. Answer, Ex. 1 ("CT") at 408, 474-79. On February 27, 2020, the trial court found that Petitioner had sustained two prior strike convictions. Answer, Ex. 2 ("RT") at 879-880. On August 28, 2020, the trial court sentenced Petitioner to 19 years in prison. CT 512.

On October 20, 2021, the California Court of Appeal affirmed the judgment of conviction and corrected the sentence to seventeen years.[1] *People v. LaGrone*, C No. A160959, 2021 WL

---

[1] The state appellate court agreed with the parties that the trial court had erred in calculating the great bodily injury enhancement applicable to Petitioner's sentence for count four, his subordinate

1  4891295 (Cal. Ct. App. Oct. 20, 2021).

2  On January 6, 2022, the California Supreme Court denied the petition for review in a
3  summary denial.  Answer, Exs. 7, 8.

4  On June 3, 2022, Petitioner filed the instant federal habeas petition.  ECF No. 1.

## II.  FACTUAL BACKGROUND

6  The following background is taken from the California Court of Appeal's opinion:[2]

### A.

8  The trouble started when two teenagers, S. and T., got into a fight at school. [FN 1]
   S.'s mother, Shay, was like a sister to LaGrone.  LaGrone met Shay and S. at a park
9  after he learned that S. had been in a fight and Shay was upset.  Shay had a plan to
   go to T.'s home.  On the way to T.'s, LaGrone observed S. remove her sweatshirt,
10 which he took to mean she was prepared to fight.

> FN 1:  To protect their privacy, this opinion uses either a first name or first
> initial to refer to bystanders, witnesses, and victims.  (*See* Cal. Rules of
> Court, rule 8.90.)

S., Shay, and LaGrone arrived at T.'s family's apartment in a group of six to eight
people, one of whom was a 16-year-old named Freddy.  S. banged on the door to
the apartment and slammed the security gate; Shay threw a bottle at the apartment.
They demanded that T. come out for "round two."

Eventually, two individuals – a teenager named D.J. and an adult named Jermell –
emerged from the apartment.  D.J., who was about 5'6'' tall and 130 pounds, began
to fight Freddy, who was about 6'3'' tall and 300 pounds.  Jermell stood to the side,
but took on a fighting stance.  LaGrone, who also stood to the side, said that they
should keep the fight fair.  LaGrone subsequently took his pocketknife – which he
carried for his work – off his belt and held it in his hand.  Another adult, Wayne,
exited the apartment and watched the fight from the side.  Neither D.J., Jermell, nor
Wayne had any weapons.

While he was fighting Freddy, D.J. stumbled or fell.  As Freddy approached D.J.,
Jermell hit Freddy hard on the back of his head or neck.  Seeing this, LaGrone
stabbed Jermell in the face.  Wayne then punched LaGrone.

Jermell realized that LaGrone had a knife after LaGrone stabbed him.  Jermell
grabbed LaGrone and put him in a headlock.  Wayne continued punching LaGrone
in the head.  While this was happening, LaGrone stabbed Jermell in the side and
back several times and stabbed Wayne in the stomach and arm.  Jermell yelled,
"'He['s] stabbing me.'"  After Jermell let go of LaGrone and ran into the house,

---

term for assault with a deadly weapon, and modified the judgment to reduce the enhancement for great bodily injury on that count from three years to one year. *LaGrone*, 2021 WL 4891295, at *8.
[2] The Court has independently reviewed the record as required by AEDPA. *Nasby v. Daniel*, 853 F.3d 1049, 1052–54 (9th Cir. 2017).  Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of the prosecution case and the defense case is supported by the record, unless otherwise indicated in this order.

LaGrone fled.

Jermell called 911, then collapsed and was taken to the hospital with nine or ten stab wounds to his stomach and back. Doctors performed surgery and installed a tube to drain blood from his lungs. Wayne had a minor wound to his bicep and a gash on his stomach that required surgery to repair an intestine.

The altercation was captured on cell phone and surveillance cameras.

**B**.

The prosecutor charged LaGrone with two counts of attempted murder (Pen. Code, §§ 187, subd. (a), 664; counts one and two) and two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); counts three and four). [FN 2] The information alleged that LaGrone personally inflicted great bodily injury (§ 12022.7, subd. (a)) with respect to each count.

> FN 2: Undesignated statutory references are to the Penal Code.

At trial, LaGrone asserted that his initial assault of Jermell was legally justified because he was acting in defense of Freddy. Further, his subsequent assaults on Jermell and Wayne were legally justified because he was acting in self-defense.

A defendant may have a complete defense based on self-defense or defense of another if the defendant "actually and reasonably believe[d] in the necessity of defending [him or her]self [or another person] from imminent danger of death or great bodily injury." (*People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on another ground by *People v. Chun* (2009) 45 Cal.4th 1172, 1201; see also CALCRIM No. 3470.) These defenses require that "[t]he defendant used no more force than was reasonably necessary to defend against [the] danger." (CALCRIM No. 3470; see also *People v. Pinholster* (1992) 1 Cal.4th 865, 966 (*Pinholster*), disapproved of on another ground by *People v. Williams* (2010) 49 Cal.4th 405, 459.)

According to LaGrone's trial testimony, he did not intend to fight anyone that day and only had a knife with him because he wore it on his belt for work. He got involved in the fight because Freddy was just a kid and he was worried for his safety after Jermell, a grown man, started assaulting him. LaGrone was fearful because Jermell appeared younger and bigger than he was. When he was in the headlock, LaGrone panicked and started swinging his knife wildly.

**C**.

The jury found LaGrone not guilty of the attempted murder counts. The jury found him guilty of the two counts of assault with a deadly weapon, and found true the allegation that he had inflicted great bodily injury in connection with both counts. The court sentenced LaGrone to an aggregate term of 19 years in prison.

*LaGrone*, 2021 WL 4891295, at *1-*2.

/ / /

/ / /

/ / /

## III. DISCUSSION

**A.     Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts' adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "had substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the

4

United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991);[3] *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Because the state supreme court issued a summary denial of the petition for review, the Court reviews the California Court of Appeal's October 20, 2021 decision because it was the last reasoned state court decision to consider Petitioner's claim.

**B.   Petitioner's Instructional Error Claim**

   **1.   Legal Standard**

Due process requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Therefore, a criminal defendant is entitled to adequate instructions on the defense theory of the case. *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnapping where instruction supported by evidence). A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one. *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam).

However, a habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776

---

[3] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005). The look through rule continues as the Ninth Circuit held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

(1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." *Id.*; *see, e.g., Coleman v. Calderon*, 210 F.3d 1047, 1051 (9th Cir. 2000) (finding *Brecht* error where "at the very least, we 'cannot say with fair assurance . . . that the judgment was not substantially swayed by the [instructional] error.'"). The proper question in assessing harm in a habeas case is, "'Do I, the judge, think that the error substantially influenced the jury's decision?'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). If the court is convinced that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. *Id.* at 437. If, on the other hand, the court is not fairly assured that there was no effect on the verdict, it must reverse. *Id.* In the "narrow circumstance" in which the court is in "grave doubt" about whether the error had substantial and injurious effect or influence in determining the jury's verdict, it must assume that the error is not harmless and the petitioner must win. *Id.* at 436, 438; *see, e.g., id.* at 436-44 (relief granted because record so evenly balanced that conscientious judge in grave doubt as to harmlessness of error); *Chambers v. McDaniel*, 549 F.3d 1191, 1200-01 (9th Cir. 2008) (granting habeas relief based upon "grave doubt" as to harmlessness of erroneous first-degree murder instruction on premeditation, where error went to "very heart of the case" and evidence against petitioner was not so great that it precluded verdict of second-degree murder).

   **2.    Analysis**

Petitioner argues that the giving of CALCRIM No. 3742 prevented the jury from giving full, meaningful, and correct consideration to his defense of self-defense/defense of others, thereby resulting in actual prejudice and denying him his right to present a complete defense. Specifically, Petitioner argues that there was "more than substantial" evidence supporting self-defense: (1) he only attacked Jermell and Suber after Jermell attacked a minor; (2) Jermell and Suber struck and punched him in the head and placed him in a headlock; and (3) there was no evidence showing that Petitioner provoked the fight. Petitioner further argues that because CALCRIM No. 3472 instructed the jury that if they believed that Petitioner had contrived to use self-defense, the jury was unable to consider the "more than substantial" evidence of self-defense. *See generally* ECF

No. 1.

Petitioner presented a similar claim on direct appeal, arguing that trial court erred in instructing with CALCRIM No. 3472 because the instruction was not supported by the evidence. The state appellate court did not directly address whether there was sufficient evidence to support the instruction, but found that, even assuming Petitioner to be correct, the giving of CALCRIM No. 3742 did not prejudice Petitioner under either state or federal law:

> *Instruction on Contrived Self-Defense*
>
> LaGrone contends that the trial court committed reversible error by instructing the jury that "[a] person does not have a right to self-defense if he provokes a fight or quarrel with the intent to create an excuse to use force." (See CALCRIM No. 3472.) We review this claim of instructional error independently (*People v. Waidla* (2000) 22 Cal.4th 690, 733 (*Waidla*)), and we find no prejudicial error.
>
> LaGrone asserts that there was no evidence that he provoked a fight with the intent to create an excuse to use force; instead, his testimony suggested that although he went along with the group, he himself did not take any action to provoke the fight.
>
> Assuming LaGrone's version of events is the only reasonable view of the evidence, he was not prejudiced under either state or federal law. Where the court provides the jury with an instruction that is a correct statement of the law but is nonetheless inapplicable to the facts of the case, the error is harmless because the jury is presumed to follow the court's instructions. (See *People v. Eulian* (2016) 247 Cal.App.4th 1324, 1335 ["If CALCRIM No. 3472 was erroneously given because it was irrelevant under the facts, the error is merely technical and not grounds for reversal."]; *People v. Frandsen* (2011) 196 Cal.App.4th 266, 278 (*Frandsen*) ["appellant's assertion that no substantial evidence supported the [giving of CALCRIM No. 3472] does not warrant our finding reversible error because the jury is presumed to disregard an instruction if the jury finds the evidence does not support its application"].) Here, the trial court instructed the jury that "[s]ome of the[ ] instructions may not apply, depending upon your findings of the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." (See CALCRIM No. 200.)
>
> Although the prosecutor argued during closing statements that the facts showed LaGrone provoked the fight to create an opportunity to use force, the jury was able to view video footage of LaGrone's interactions with the victims for itself, and defense counsel thoroughly detailed the evidence that LaGrone did not personally act to provoke a fight. Defense counsel argued that the prosecutor's factual assertions that LaGrone went to the apartment because he had a knife and drew the victims out "are not supported by the evidence." She played the video evidence and narrated LaGrone's actions throughout, including the fact that "[h]e didn't challenge people in the apartment. He didn't say anything to them. He was trying to make very clear with his body language he was not there to engage them. [¶] . . . [H]is body language[ ] [was] showing he is not there to be in a confrontation. He is not there to fight." Defense counsel noted that when Jermell took on a fighting stance, LaGrone put out his left hand to tell Jermell to stop, get back; she tells the

> jury, "You can see it in the cell phone video and the surveillance video." The court also reminded the jurors that they are the "triers of the facts." The jury was able to view the videos and confirm defense counsel's account, and there is no reason to think the jury would have disregarded the court's instructions.

*LaGrone*, 2021 WL 4891295, at *2-*3.

Petitioner is not entitled to relief unless the giving of CALCRIM No. 3742 had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht*, 507 U.S. at 637. The Court has carefully reviewed the record and finds that the state court's determination that Petitioner was not prejudiced by the giving of CALCRIM No. 3742 was not contrary to, and did not involve an unreasonable application of, clearly established Federal law; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Petitioner has not presented any evidence that the jury improperly applied CALCRIM No. 3742 and the record indicates that there was sufficient evidence from which a jury could find that the prosecution had proven beyond a reasonable doubt that Petitioner was not engaged in self-defense.

The jury was instructed that they were the ultimate arbiter of the facts and that whether a jury instruction was applicable depended on its findings about the facts of the case. RT 689-90.[4] The jury was also instructed that to prove Petitioner guilty of assault with a deadly weapon, the prosecution must prove beyond a reasonable doubt that Petitioner did not act in self-defense or defense of someone else, and that if the prosecution did not meet its burden of proof with respect to defense of another, the jury was required to acquit Petitioner of the charges. RT 705-06, 712. The jury was instructed that acting in the defense of others was defined as follows:

> The defendant acted in . . . defense of another if the defendant reasonably believed that . . . another person was in imminent danger of being touched unlawfully;
> The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;

---

[4] "You must decide what the facts are. It is up to all of you, and you alone, to decide what happened, based only on the evidence that has been presented to you in this trial . . . . Pay careful attention to all of these instructions and consider them together . . . .Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." RT 689-90.

8

>    The defendant used no more force than was reasonably necessary to defend against that danger. . . .
>    The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation.  If the defendant used more force than was reasonable, the defendant did not act in lawful defense or defense of another.
>    When deciding whether the defendant's beliefs were reasonable, consider all of the circumstances as they were known to and appeared to the defendant, and consider what a reason[able] person in a similar situation with similar knowledge would have believed.

RT 711.  There was sufficient evidence from which a jury could reasonably conclude that Petitioner did not act in defense of another in that Petitioner used more force than was reasonable. Petitioner's initial response to seeing Freddy hit was to use a knife, which he kept hidden from view, and stab Jermell in the face.  Yet, up to that point, no weapons had been used and there was no indication that any of the participants or bystanders had weapons available to them.  Petitioner had other options available to him, such as asking the parties to stop fighting, pulling Freddy away, warning D.J. and Jermell that he had a knife, or engaging in the fight with his fists. Petitioner's concern that he could not "win" the fistfight with fists alone did not necessarily render the use of a knife reasonable in this situation because a jury could conclude that was not reasonable to think that Petitioner could only protect Freddy by winning the fistfight.  Petitioner's argument that he was prejudiced by CALCRIM No. 3742 because there was substantial evidence that he acted in defense of others relies on the incorrect assumption that the prosecution did not prove beyond a reasonable doubt that Petitioner had not acted in defense of others.  As explained *supra*, there is sufficient evidence in the record from which a jury could conclude beyond a reasonable doubt that Petitioner had not acted in defense of Freddy because he used more force than was reasonable in the situation.  Petitioner has not demonstrated that the giving of CALCRIM No. 3742 was error or that it caused him actual prejudice because, even if there was insufficient evidence that he provoked the fight, Petitioner has not demonstrated that the jury found CALCRIM No. 3742 applicable or that the prosecution failed to meet its burden of proof.   Federal habeas relief is denied on this claim.

/ / /

/ / /

**C.     Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

### IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED. The Clerk shall enter judgment in favor of Respondent and close the case.

**IT IS SO ORDERED.**

Dated: July 31, 2023

JON S. TIGAR
United States District Judge